NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KRAFT POWER CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY, d/b/a<br>GE ENERGY,<br><br>Defendant. | Civil Action No.: 11-6073 (JLL)<br><br>OPINION |

**LINARES,** District Judge.

This matter comes before the Court on Plaintiff's motion for a preliminary injunction and Defendant's motion to dismiss or stay and transfer to arbitration. The Court has considered the submissions of the parties and the arguments by counsel placed on the record on November 7, 2011. For the reasons set forth below, Plaintiff's motion for a preliminary injunction is denied and Defendant's motion to dismiss and transfer to arbitration is granted.

I.  **BACKGROUND**

Kraft Power Corporation ("Kraft") is a Massachusetts corporation with a principal place of business in New Jersey. Kraft distributes, sells and services industrial engines and generators from a variety of products including GE's Waukesha brand of products. Verified Complaint ("Compl.") ¶ 8. General Electric Company ("GE") is a New York Corporation with its principal place of business in Connecticut. Id. ¶ 9. Kraft has been an authorized distributor of Waukesha products for 46 years. Id. ¶¶ 1, 16.

In 1974, Dresser Industries, Inc. purchased Waukesha Motor Company. Id. ¶ 15. Dresser

operated the Waukesha business until February 1, 2011, when GE purchased Dresser. Id. GE is now the manufacturer of Waukesha brand products. Id. In 2006, Dresser offered Kraft a three-year term agreement (the "Agreement"), which Kraft signed. Id. ¶ 16. After the three-year term expired in December 2009, Dresser extended the Agreement to Kraft on a month to month basis. Id. ¶ 19. The same month to month Agreement now governs the current relationship between GE and Kraft with respect to Kraft's distribution of Waukesha products. Id. ¶ 24. Kraft asserts that it is a franchise, but GE maintains that Kraft's relationship with Waukesha was that of an independent contractor or distributor of Waukesha products. Id. ¶¶ 86, 88; Defendant's Brief in Opposition to Plaintiff's Motion and in Support of Motion to Dismiss ("Def. Brief") at 2.

The Agreement contains an arbitration provision which requires disputes arising out of the Agreement to be settled by binding arbitration in Dallas, TX with the American Arbitration Association ("AAA"). Id. ¶ 25. The Agreement further states that any disputes arising out of the Agreement will be governed by the laws of the State of Texas, excluding its conflict of law rules. Id. ¶ 26.

On August 8, 2011, Kraft's President Owen Duffy received a letter from GE stating that GE was terminating its distributorship agreement with Kraft effective November 8, 2011, or ninety-three (93) days after the date of the termination notice as required by the Agreement. Id. ¶ 63. In the letter, GE also stated that it was appointing another distributor to sell Waukesha products in Kraft's distribution territory and terminated many of Kraft's rights under the Agreement immediately, including eliminating discounts on Waukesha products previously offered to Kraft. Id. ¶ 65. GE claims that reason it altered its prices was to prevent stock piling of Waukesha products by the terminated distributors. According to GE, terminated distributors

could request relief from the price changes and such requests were reviewed on a case by case basis. Def. Brief at 6.

After receiving the letter on August 8, 2011, Patricia Bianco (Global Channel Director, GE Gas Engines), Brian White (President of Waukesha), and Cynthia Bosh (Waukesha's in-house counsel) visited Mr. Duffy to confirm the termination. Id. ¶ 63. At this meeting, Ms. Bianco told Mr. Duffy that the reason for the termination was because GE planned to change the Waukesha distribution system, and not, because Kraft had performed poorly. Id. ¶ 64.

In its Complaint filed October 14, 2011, Kraft maintains that this termination is unlawful under the New Jersey Franchise Practices Act. Compl. ¶ 73. Additionally, Kraft asserts that GE breached the Agreement by failing to provide proper notice of the termination. Id. ¶ 67. On October 17, 2011, this Court issued an Order to Show Cause why an Order should not issue, *inter alia*, enjoining GE from terminating the Agreement pending arbitration of the dispute. This Court held oral argument on November 7, 2011. Plaintiff requested (1) a judgment from this Court declaring that New Jersey law applies in resolving all of the rights and obligations of the parties to the agreement, including the dispute pending before the AAA; (2) a declaration that the Agreement's choice of law provision providing for the application of Texas law is unenforceable pursuant to New Jersey law; and (3) an injunction reinstating the "status quo" between the parties pending the resolution of this matter at arbitration. Defendant has also filed a motion to dismiss or stay and transfer to arbitration.

## II.  LEGAL STANDARD

### A.  Forum Selection and Choice of Law

Federal Rule of Civil Procedure 12(b)(3) permits a party to file a motion to dismiss for

3

improper venue in response to a pleading. Fed. R. Civ. P. 12(b)(3). A party moving for dismissal bears the burden of showing that venue does not lie. Myers v. Am. Dental Ass'n, 695 F.2d 716, 724-25 (3d Cir. 1982). The statutory requirement for establishing venue in a federal district court is provided by 28 U.S.C. § 1391, and in a case such as this, where jurisdiction is predicated upon diversity of citizenship, subsection (a) provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought

28 U.S.C. § 1391(a). The Third Circuit has stated that the purpose of the venue statute is generally to "protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3d Cir. 1994) (quoting LeRoy v. Great W. United Corp., 443 U.S. 173, 83-84 (1979)).

Further, the enforeceability of a forum selection clause is determined as a matter of federal law. Cadapult Grpahic Systems, Inc. v. Tektronix, Inc., 98 F. Supp. 560, 563 (D.N.J. 2000) (citing Jumara v. State Farm Ins., Co., 55 F.3d 873, 877 (3d Cir.1995)). Forum selection clauses are presumptively valid. M/S Breman v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Such clauses will not be set aside unless the objecting party can establish that: (1) the clause was procured as the result of fraud or overreaching; (2) enforcement would violate the strong public policy of the forum; or (3) enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable. Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 202 (3d Cir. 1983), cert. denied, 464 U.S. 938

(1983) (citing Bremen, 407 U.S. at 10). The party objecting to the enforcement of a forum selection clause bears the "heavy burden" of demonstrating why they should not be bound by their contractual choice of forum. Pemaguid Underwriting Brokerage, Inc. v. Mutual Holdings (Bermuda), Ltd., 2003 U.S. Dist. LEXIS 26480 *14 (D.N.J. June 3, 2003) (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)).

B.  **Preliminary Injunction**

Although the Court typically applies state law in diversity actions, the Court utilizes a federal standard in examining requests to federal courts for preliminary injunctions." Instant Air Freight Co v. C.F. Air Freight, Inc., 882 F.2d 797, 799 (3d Cir. 1989). In determining whether to grant a temporary restraining order, a Court must consider: (1) the movant's likelihood of success on the merits; (2) the probability of irreparable harm to the moving party if immediate relief is not granted; (3) the potential harm to the non-moving party; and where applicable, (4) the public interest. Allegheny Energy Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999).

III.  **ANALYSIS**

A.  **Preliminary Injunction**

The parties' agreement to submit their disputes to arbitration does not preclude this Court from granting a preliminary injunction to preserve or restore the status quo, provided that the moving party satisfies the standards for preliminary injunctive relief. Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989); Specialty Bakeries, Inc. v. RobHal, Inc., 961 F.Supp. 882, 829 (E.D. Pa.), aff'd, 129 129 F.3d 726 (3d. Cir. 1997). However, Plaintiff has failed to meet its burden with respect to irreparable harm and public policy.

To satisfy the irreparable harm element, the moving party must make a clear showing of

immediate, irreparable injury or a presently existing threat of same. Barclays Business Credit, Inc. v. Four Winds Plaza Partnership, 938 F. Supp. 304, 307 (D. Vi. 1996). The Court of Appeals for the Third Circuit has consistently held that financial or economic injury does not constitute irreparable harm necessary to support an award of injunctive relief. See Acierno v. New Castle County, 40 F.3d 645, 653 (3d Cir. 1994) ("In general, to show irreparable harm a plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following trial. Economic loss does not constitute irreparable harm....").

Plaintiff argues that without an injunction Kraft will lose "one-third of its total business," and be unable to maintain skilled employees and an adequate inventory of parts. Plaintiff's Memorandum in Support of Preliminary Injunction ("Pl. Brief") at 13-14. Plaintiffs also allege that termination of the franchise will devalue Kraft's good will. See Pl. Brief at 24. However, these alleged injuries are compensable with money damages and therefore do not constitute irreparable harm necessary to sustain an award of injunctive relief. Central Jersey Freightliner v. Freightliner, Corp., 987 F.Supp. 289 (D.N.J. 1997).

With regard to the public interest, Plaintiff correctly argues that the NJFPA evinces a strong public policy of protecting franchisees from the disparate bargaining power between franchisors and franchisees. Plaintiffs therefore argue that the public interest favors an award of injunctive relief. However, absent a determination that 1) Plaintiff is a franchise; and 2) Defendant has even violated that NJFPA (determinations that Plaintiff concedes are reserved to the arbitrator). Tr. 28, 4-6. The Court declines to find that an award of injunctive relief would serve the public interest.

As such, Plaintiff's motion for a preliminary injunction reinstating the "status quo"

pending arbitration is denied.

B.   **Forum Selection and Choice of Law**

Plaintiff concedes that whether Plaintiff is a franchise and whether GE has violated the New Jersey Franchise Practice Act (NJFPA) is a decision for the arbitrator. Tr. 28, 4-6. Still, Plaintiff asks this Court to declare that New Jersey is the proper forum and governing law. Specifically, in determining the proper forum, Kraft asks this Court to consider the test it applied in Cohen v. Stratis Business Centers, Inc., 2005 WL 300807 (D.N.J. Nov. 9, 2005). In Cohen, this Court used a two-part inquiry to evaluate an arbitral forum selection clause. The first part of the test examines whether there has been "fraud, influence or overweening bargaining power" in the execution of the Agreement. Id. at *3. Plaintiff does not allege that GE committed fraud or exerted undue influence during execution of the Agreement. Tr. 30, 10-18. Thus, having found that the forum selection clause is valid, the Court considers the second prong of the analysis: public or private factors that may weigh against its enforceability.

The United States Supreme Court has held that a contractual consent to personal jurisdiction should be enforced unless it would be unreasonable or unjust to do so. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985). Indeed, "outside of Franchise Practices Act cases, New Jersey courts routinely find forum selection clauses prima facie valid and enforceable." Park Inn Int'l v. Mody Enters., Inc., 105 F. Supp. 2d 370, 373-74 (D.N.J. 2000). When determining whether to decline to enforce a valid forum selection, the Court weighs, *inter alia*, the following factors: plaintiff's forum preference as manifested in the original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses,

book and records, the enforceability of the judgment, practical considerations relating to the trial, local interest in a local controversy, and the public policy of the forum. Cohen, 2005 WL 300807 * 4.

Plaintiff argues that the forum selection clause contained in the Agreement is unenforceable because it contravenes the public policy of the NJFPA. However, the Court cannot consider the public policy considerations evinced by the NJFPA before it has considered whether the facts of this case even implicate the NJFPA. As stated, absent a determination that 1) Plaintiff is a franchise; and 2) Defendant has even violated that NJFPA (a decision that Plaintiff concedes is reserved to the arbitrator), public and private interest factors overwhelmingly favor enforcing the Agreement's forum selection clause. Further, conducting the arbitration in Texas does not preclude application of the NJFPA should the arbitrator determine that it controls.

Other factors also support enforcing the Forum Selection Clause. Neither party is a New Jersey corporation; rather, the parties are New York and Massachusetts companies respectively. Dresser, which owned Waukesha at the time the Agreement was executed and through February of this year, is based in Dallas, TX. The termination was issued out of Wisconsin and the controlling GE Energy Group is based in Atlanta, GA. Additionally, Plaintiff concedes that the relevant books and records are in New Jersey and "Massachusetts for Kraft." Tr. 33, 16-18.

Kraft asks this Court to rely on its own decision in Cohen, wherein this Court declined to enforce a forum selection clause that established Texas as the proper place of the litigation. However, Cohen is distinguishable from this case because in Cohen, the parties had a significant connection to New Jersey, and no connection to Texas. 2005 WL 300807 * 4. In this case,

8

without a determination that Kraft is a franchise protected by the NJFPA, the parties have only a tangential relationship to New Jersey, which is insufficient to overcome an otherwise valid forum selection clause. As such, this Court determines that Texas is the proper site of the litigation.

In a choice of law analysis, the Court considers: the needs of the interstate systems, the relevant policies of the forum, the relevant policies of other interested state, the protection of justified expectation, the basic policies underlying the particular field of law, certainty, predictability and uniformity of result, and ease in the determination and application of the law to be applied. Restatement (Second) of Contracts §§ 6, 188. The Court finds that in light of these factors, the Texas forum, and because the NJFPA analysis is reserved to the arbitrator, the arbitrator is better which State's law applies to this dispute.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for a preliminary injunction is denied and Defendant's motion to dismiss and transfer to arbitration is granted. An appropriate Order accompanies this Opinion.

Dated: December 1, 2011

/s/ Jose L. Linares
JOSE L. LINARES
U.S. DISTRICT JUDGE